Curtiss v. Follett.

[CAYUGA GENERAL TERM, June 6, 1853. *Selden, T. R. Strong* and *Johnson,*
Justices.]

◆

CURTISS and others *vs.* FOLLETT and VAN DYKE.

A comptroller's deed is now *prima facie* evidence not only of the regularity
of the sale, but also of all the steps and proceedings necessary to confer au-
thority upon the comptroller to sell; and the burthen of disproving the
authority of the comptroller is thrown upon the party disputing the deed.
But if a party claiming under a comptroller's deed, instead of relying upon the
*prima facie* evidence afforded by it, undertakes *to give direct evidence of*
the preliminary steps, and thus make out the comptroller's authority, but
fails to establish the regularity of the proceedings, the presumption in favor
of the deed will be overthrown.
Thus where a party introduced a certified copy of the return of the collector,
of the non-payment of the taxes under which the sale was made, with an
affidavit annexed, which did not show that the account returned to the
treasurer was a transcript from the original assessment roll, nor any thing
upon that subject; *Held,* that neither the treasurer nor the comptroller had
any evidence before him that the taxes assessed by the assessors and con-
tained in the assessment roll remained unpaid; and that the presumptions
in favor of the validity and regularity of the sale, afforded by the deed,
were completely negatived, and the sale and conveyance shown to be en-
tirely void.
Unless it appears from the return of the collector that the taxes assessed and
contained in the assessment roll, have not been paid, the comptroller has
no authority to sell. The evidence of that fact, in the manner prescribed,
can alone give him jurisdiction.
A deed by husband and wife, not acknowledged by the wife, gives to the
grantee an estate for the life of the husband only, and upon the death of
the husband, the wife will be restored to all her rights in the premises,
divested of the claims of the husband and his grantees.
And the statute expressly declaring that the right of a married woman shall
not pass by her deed, unless the same is acknowledged, the fact that the

consideration of a conveyance by her and her husband was paid to the wife, will not estop her from claiming the land after the death of her husband.

A subsequent conveyance by the occupants, of premises which have been sold for taxes, is no evidence that they have waived the notice which the statute requires a purchaser at a tax sale to give to the occupant of the land, in order to perfect his title.

A waiver is not equivalent to the service of a notice which the statute requires, to render a title under a statutory proceeding complete.

· THIS action was commenced in June, 1851, to recover the possession of about two acres of land in the city of Rochester, being part of lot No. 16, of the third division of lots, in township No. 13, in the 7th range of townships of Phelps and Gorham's purchase. The defendants were in possession at the time the suit was commenced; the defendant, Van Dyke, as tenant of the other defendant. The defendants' answer denied the title of the plaintiffs, and set up title in the defendant Hannah Follett. The cause was tried at the Monroe circuit, held by Justice Pratt, in July, 1852.

Upon the trial the plaintiffs proved that one Joseph Ellis went into possession of the premises in question under Abijah B. Curtiss, in May, 1829; that when he left, Curtiss put one Boyd into possession, who continued to occupy until one William Hamilton went into possession, in the spring of 1831. Abijah B. Curtiss died in the fall of 1830. At this time Roswell Lockwood had charge of the premises, as agent of Betsey Curtiss, who was a maiden sister of Abijah B. Curtiss. Hamilton went into possession under a lease from her, and continued in possession for six years. Betsy Curtiss died in 1837, having first made her last will and testament in due form to pass real estate, whereby, among other things, she directed her executors, as soon as it could be advantageously done, to sell her real estate, and after the payment of her debts, to distribute the proceeds in equal portions to the three plaintiffs. The plaintiffs were her only heirs at law, and also the only heirs at law of Abijah B. Curtiss. After the death of Betsey Custiss, her executors, Roswell Lockwood, Henry E. Rochester and Otis P. Sheldon, took charge of the property, and continued to manage it until

Curtiss *v.* Follett.

it was surrendered to the plaintiffs, in the year 1851, before the commencement of this suit. There was a log house upon the premises in question, when Ellis went into possession, which remained there and was occupied by the successive tenants, until it was torn down by Henry E. Rochester's directions, some five or six years before the trial. These premises in question were occupied, not as a distinct parcel, but as a part of the entire lot, the title to which was claimed by Betsey Curtiss. The lot was cultivated or kept enclosed until within two or three years of the trial, when the fence upon the street was removed, with a design of replacing it with a board fence, which however was not built, so that the premises in question lay open to the street. There was a fence on two sides of the lot, and one Tripp had permission to take sand from a sand bank upon the premises in question, from one of the plaintiffs, with directions from him and the executors to take charge of the lot. Tripp was in the habit of taking and selling sand from the premises in question, and was engaged in doing so when the defendants came into possession, as next hereinafter mentioned. In April, 1851, the defendants entered into the possession of the premises in question, and still remain in possession. Here the plaintiffs rested. The defendants then gave in evidence a warranty deed of the premises in question, duly acknowledged and recorded, from Samuel Jones and his wife to Hannah Follett, dated January 4th, 1824, and proved that she lived on the premises in 1823, and before that time, and that she resided there some six or eight years in the whole. The defendants then rested. The plaintiffs then gave in evidence a quit-claim deed of the premises in question, from Henry T. Follett and Hannah his wife, but not acknowledged, to Betsey Curtiss, dated May 12th, 1829, and then proved by the subscribing witness that both of them executed the deed in his presence. That he, Follett and wife, and Abijah B. Curtiss were sitting together at the same table, and that Curtiss remarked to him that he had paid Mrs. Follett $250, and asked him to witness the deed. That the deed was then executed, and he witnessed it. Mrs. Follett and her husband left the premises in May, 1829, eight or ten days after the

execution of this deed.    That before she went away, she stated
to Tripp that she was willing to leave the premises, now that
Mr. Curtiss had satisfied her.    The plaintiffs then proved that
search had been made in the office of the town clerk of the town
of Brighton,  in the office of the clerk of the board of supervisors,
and among the papers of the executors of Enos Blossom, proved
to have been collector of the town of Brighton for the years
1817 and 1818, for the assessment rolls of that town for those
years ;  that nothing of the kind could be found except a paper,
purporting to be a draft of a valuation roll for the year 1817,
not signed by the assessors, from which it appeared that the
said lot No. 16, was set down as non-resident land, Samuel
Jones, owner.    The plaintiffs then gave in evidence the returns
of Enos Blossom, collector of the town of Brighton, for the years
1817, and 1818, which embraced lot 16, stating it to be " non-
resident," and giving the value of said lot, and the amount of
the tax thereon.    The return for each year was accompanied
by an affidavit of the collector, in which he swore that the
" sums mentioned in the preceding account remain due and un-
paid, and that I have not, upon. diligent inquiry, been able to
discover any goods or chattels belonging  to or in possession of
either of the persons charged with or liable to pay the said re-
spective sums, whereon I could levy the same."

A certificate of the comptroller was then introduced, in which
he stated that he had compared the preceding extracts above
referred to, from the accounts of unpaid taxes on lands of non-
residents, returned to his office for the years 1817 and 1818, by
the treasurer of the county of Ontario ; and that the same were
correct extracts from the originals on file in said office, and con-
tained all that related to lot sixteen, township thirteen, range
seven, division three, in Phelps and Gorham's purchase.    The
plaintiffs then produced and gave in evidence a certificate of the
comptroller, of the sale of the premises in question, for taxes, by
the comptroller, on the 12th day of April, 1826, to H. N. Cur-
tiss.    And a deed from the comptroller, covering the premises
in question, in the usual form, to Horatio N. Curtiss, bearing
date May 1st, 1828 ; and a deed from Horatio N. Curtiss to

Curtiss v. Follett.

Betsey Curtiss, of the same premises, dated June 27, 1828, duly acknowledged and recorded. The plaintiffs then proved by a witness, that he served a notice on Hannah Follett, in 1828, or before, who said to him that she would not leave the premises unless Abijah B. Curtiss would make her some recompense. It was then proved that Henry T. Follett died in February, 1840. The plaintiffs then gave in evidence a deed duly acknowledged and recorded, from David Armour to Benjamin Miller, of the said lot No. 16, dated May 25th, 1825; a mortgage of the said lot, of the same date, duly acknowledged and recorded, from Miller to Armour; a transfer of mortgage to Abijah B. Curtiss, dated April 13th, 1827, and a release of the equity of redemption of the mortgaged premises from Miller to Abijah B. Curtiss, dated April 24th, 1827, acknowledged at its date, and recorded in 1852; also, a deed from Abijah B. Curtiss to Betsey Curtiss, dated April 24th, 1828, duly acknowledged and recorded on the same day. The plaintiff then proved that Benjamin Miller was in possession of the said lot, except the two acres in question, then in the possession of the defendant, Follett, in the years 1825, 1826, 1827 and 1828, and then again rested. The defendant then proved by Ashley Sampson, that he had a mortgage on the premises in question, dated in 1822, executed to him by Samuel Jones; that he foreclosed it and turned Mrs. Follett out of possession, several years afterward, but could not tell exactly when. She again went into possession of the two acres. The court thereupon, with the consent of both parties, directed a verdict for the plaintiffs, subject to a case to be made by them, for the opinion of the supreme court at general term, with power to give judgment to either party, and with liberty to either party to turn the case into a bill of exceptions.

*O. Hastings*, for the plaintiffs.

*J. A. Spencer*, for the defendants.

*By the Court*, JOHNSON, J. The premises in question con-
sist of about two acres of land, within the bounds of the city
of Rochester. At the time of the commencement of the action,
the defendants were in the actual and peaceable possession of
the premises. This was sufficient for them, unless the plaintiffs
could show a title which gave them the right to the possession
as against the defendants. The plaintiffs undertook to make
title to themselves from three different sources. First, by a
deed of lot number 16, of which the two acres in question are a
part, from David Armour to Benjamin Miller, dated May 25th,
1825, and by sundry mesne conveyances to the plaintiffs. Se-
cond, by a deed from the comptroller, in pursuance of a tax sale,
dated May 1st, 1828. The sale was on the 12th of April, 1826,
of twenty-four acres, in the northwest corner or part of lot 16,
for the taxes of 1817 and 1818, and embraced the premises in
question. Third, by quit-claim deed from the defendant, Hannah
Follett, and her husband Henry T. Follett, to Betsey Curtiss,
dated May 12th, 1829. Hannah Follett was then a married
woman, residing with her husband upon the premises in ques-
tion; and this deed was not acknowledged by her. Convey-
ances from all these sources united in Betsey Curtiss, who died
in 1837, having devised the lands, including these premises, to
the plaintiffs. But I am clearly of opinion that, notwithstand-
ing all these conveyances, the plaintiffs have entirely failed to
make out a valid title to the premises in question, as against
Hannah Follett and those holding under her.

As to the conveyance from Armour, no attempt was made to
show title in him at the time of his conveyance, or prior thereto.
Besides, the defendant, Hannah Follett, and her husband, were
then in the actual possession of the premises in question, under
a deed of a prior date to her, from another person. So that this
deed from Armour was void, even had title been shown in him
at the time.

Nothing can be claimed from the comptroller's deed; because,
had it appeared that all the proceedings were regular; so as to
give the comptroller authority to sell and convey, the land was
actually occupied, at the date of the conveyance, by Mrs. Follett

Curtiss *v.* Follett.

and her husband; and no notice, such as the statute requires in such cases, is shown to have been given to them by the grantee. Indeed, it is expressly admitted by the plaintiffs' counsel, that no such notice was given. But the preliminary proceedings were clearly defective, and the comptroller acquired no jurisdiction, and had no power or authority to sell.

Before the act of 1850, (*Sess. Laws of* 1850, 344, *chap.* 183,) amending the revised statutes, it was necessary for a party claiming under a comptroller's deed, in order to entitle himself to recover, to go behind the deed and show at least a valid assessment and a regular return by the proper collector, to establish the authority of the comptroller to sell and convey. His deed was only *prima facie* evidence that the proceedings had been all regular in regard to the sale and conveyance; but not of the authority to sell. That was to be made out by evidence *aliunde*. This act has, however, changed the rule of evidence on this subject; and thrown the burthen of disproving the authority of the comptroller, upon the party disputing the deed.

The comptroller's deed is now *prima facie* evidence not only of the regularity of the sale, but also of all the steps and proceedings necessary to confer authority upon the comptroller to sell. The plaintiffs, upon the trial, not relying, as they might have done, upon the *prima facie* evidence afforded by the deed, undertook to give direct evidence of the preliminary steps, and thus make out the comptroller's authority. In doing this, they introduced a certified copy of the return of the collector, of the non-payment of the taxes under which the sale was in fact made. This return is clearly defective. The statute (2 *R. S.* 513, § 11,) under which the return was made, required the collector, within a week after the expiration of the time for paying the amount of the tax to the county treasurer, to deliver to such treasurer an account of all taxes remaining due, which he had been unable to levy, and make oath that the sums mentioned in such account remained unpaid, and that he had been unable to discover any goods or chattels belonging to or in the possession of the persons charged, whereon he could levy the same; and that the account was a true transcript from the original assess-

ment roll.   The affidavit annexed by the collector to his account returned to the treasurer, did not show that the account so returned was a transcript from the original assessment roll, nor any thing upon that subject.   Neither the treasurer, therefore, nor the comptroller, had any evidence before him, that the taxes assessed by the assessors and contained in the assessment roll remained unpaid.   The presumptions in favor of the validity and regularity of the sale, afforded by the deed, were completely negatived by this proof, and the sale and conveyance shown to be entirely void.   No assessment whatever, in fact, was shown; and for aught that appears to the contrary, the account returned was one made up by the collector.   Unless it appeared from the return of the collector that the taxes assessed and contained in the assessment roll had not been paid, the comptroller had no authority to sell.   The evidence of this fact, in the manner prescribed, could alone give him jurisdiction.

The deed from Henry T. Follett and his wife, Hannah Follett, the defendant, gave to the grantee an estate for the life of the husband only, not being acknowledged by the wife.   This estate terminated at the death of Henry T. Follett, the husband, in February, 1840.   By this event Mrs. Follett was fully restored to all her rights in the premises, divested of the claims of the husband and his grantees.   This right, it seems, she exercised, and resumed possession in April, 1851.   Follett and wife claimed, as has been seen, under a deed to the wife.

The plaintiffs' counsel contends that the conveyance by the defendant Hannah Follett and her husband, in May, 1829, was in affirmance of the comptroller's deed, and is evidence that they waived the notice which the statute requires the purchaser at the tax sale to give to the occupant of the land, in order to perfect his title.   But the inference from the fact of the sale and conveyance by Follett and wife, is manifestly just the contrary of this.   The consideration of this conveyance is shown to have been $250, paid to Mrs. Follett, in money, and is clear evidence that neither the grantors nor the grantee regarded the comptroller's deed as of any consequence.   But independent of this, a waiver is not equivalent to the service of a notice, which the

statute requires to render a title under a statutory proceeding complete. (*Jackson* v. *Esty*, 7 *Wend.* 148.)

Again; it is urged by the plaintiffs' counsel that inasmuch as it is shown by the evidence, that the consideration of the conveyance was paid to Mrs. Follett, instead of her husband, at the time of giving the deed, she is estopped from claiming the land, although her deed was not properly executed to divest her of her title. But this consequence does not follow in the present case, even if we were to hold that the principle of estoppel applies to married women when acting under and with their husbands. It is a sufficient answer, I think, for her, that by the express provision of the statute her right did not pass to the grantee, and was in no wise affected by this deed. But if this were not so, the evidence does not show that she ever agreed to do any thing more than she did do; nor that she was ever requested to acknowledge the deed; nor, indeed, that it was ever expected by the grantee that she would. The deed was effectual without her acknowledgment, for the purpose of divesting the husband of his estate in the land; and the presumption is, that the parties understood the law, and only bargained for the right which the deed as executed and accepted legally conveyed.

Another ground taken by the plaintiffs' counsel is, that the defendants themselves proved by parol that Mrs. Follett and her husband were turned out of possession of the premises some time prior to 1829, on the foreclosure of a mortgage upon the same premises, executed by her grantor, and that as she was shown to have been in possession again in May, 1829, the presumption is that she went in under the title through which the plaintiffs claim. But no such presumption arises; especially when the fact is shown that the testator under whom the plaintiffs claim, purchased and took a conveyance from the defendant Mrs. Follett and her husband, who were then actually in possession claiming title to it, and surrendered their possession to the grantee soon after executing the deed. The legal inference is just the reverse of that claimed.

The plaintiffs, however, are not estopped by this quit-claim deed from Follett and wife, from questioning the defendants' title, and showing a perfect one in themselves from another source, as claimed by the defendants' counsel. (*Sparrow* v. *Kingman*, 1 *Comst*. 242.) But although the deed is not conclusive as an estoppel, it is, certainly, unexplained, presumptive evidence that Betsey Curtiss, under whom the plaintiffs claim, recognized the validity of the claim of her grantors, and as one hostile to hers. And as Mrs. Follett's rights were not affected by that deed, independent of the rights of her husband, and she has resumed her possession, her claim must be regarded as sufficient, against the plaintiffs' claim of title, until they can trace theirs back to the original source of title.

The defendants are, therefore, in my opinion, entitled to judgment on the case presented.

