JAMES T. THOMPSON, Respondent, *v.* BENJAMIN P. BURHANS et al., Appellant.       •

The rule that one having color of title by deed to a farm or lot of land, and possession of a part, shall be deemed constructively in possession of the whole, applies when the land claimed is of a proper size to be managed and used in a body, according to the custom and business of the country ; it does not apply to a large tract of land, which can never be so used.

In an action of ejectment, plaintiff claimed under a void comptroller's deed, which purported to convey, in separate parcels, the north-east, the north-west and the south-east quarter of township forty-seven, each quarter containing 6,300 acres. The land in question was 4,000 acres, adjoining the north line of the township. Plaintiff showed that he entered into possession, claiming under his deed, and improved 400 acres in the south-east corner of the south-east quarter. No other portion of the township had been cleared or cultivated. *Held*, that this did not show a constructive possession of the land in controversy, or give a right of action, even as against trespassers.

Also *held*, that the fact that plaintiff had paid taxes on the land, and had caused the same to be surveyed and divided into lots, was no evidence of possession, actual or constructive.

Where a township which has not been subdivided into lots is non-resident land, and is assessed as such, it is the duty of the assessors to assess it by its number as one lot ; they have no right to subdivide it into lots and to assess them at different valuations.

An affidavit by a collector to his return to the county treasurer of unpaid taxes, without a venue, is a nullity.

A collector's return to the county treasurer is insufficient where it is neither stated therein nor in the affidavits attached, that the account is a transcript of the assessment roll, or that the figures are taken therefrom, or that the sums claimed to be due are for unpaid taxes assessed against the property described.

So, also, where neither the return of the collector nor that of the county treasurer shows that the taxes remaining unpaid are upon non-resident lands, they lay no foundation for a sale by the comptroller.

It is the duty of the comptroller to advertise and sell land by lots and descriptions as returned to him.

Where assessors, in making an assessment upon an undivided township for one year, assessed it in twenty-four separate lots, with a different valuation and tax for each, and for another year assessed it in quarters, *held*, that a sale made by the comptroller in quarters, for the taxes of the two years, was irregular and unauthorized.

An omission by the comptroller, to publish the requisite statutory notices for six weeks, at least six months prior to the expiration of the two years allowed for redemption, invalidates the title under his deed.

A notice giving a wrong number to the township in which the land is situated, is invalid.

*Thompson* v. *Burhans* (61 Barb., 260) reversed.

(Argued May 16, 1874; decided September term, 1874.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, affirming a judgment in favor of the plaintiff, entered upon the report of a referee. (Reported below, 61 Barb., 260.)

This was an action of ejectment brought to recover the possession of certain lands situate in the county of Essex, being, as the plaintiff in his complaint alleges, five undivided sixteenth parts of 4,000 acres of land in the northerly part of township number forty-seven, in the division of what was known as Totten and Crossfield's purchase into townships, and bounded on the north by the south line of what was known as Macomb's purchase. This tract of 4,000 acres was particularly described in the complaint, and of which the plaintiff alleged he was, on the 27th of May, 1864, lawfully possessed as owner in fee, and upon which, while he was so seized and possessed, etc., in December, 1865, before the commencement of this action, the defendants wrongfully entered and withhold from him the possession. The defendants, in their answer, after denying each allegation of the plaintiff's complaint, admitted themselves to be in possession of a gore of land, of which they alleged they were lawfully seized, lying north of and adjoining township forty-seven, which they described by metes and bounds corresponding in courses, distances and quantity with the land described in the complaint. The plaintiff proved, by letters patent, witnessed August 14, 1795, which passed the office of the secretary of State, July 19, 1792, that 25,000 acres of land were granted by the State to one Effingham Laurence, which the plaintiff claimed and the evidence tended to prove was all the land embraced in township number forty-seven.

The plaintiff then gave in evidence letters patent from the

State, under date of May 27, 1864, by which the State released and quit-claimed to the defendant Burhans all the unsold land belonging to the people of this State, estimated to contain 4,000 acres, more or less, in a gore lying north of and adjacent to township number forty-seven of Totten and Crossfield's purchase. The specific description, as stated in the patent, was in all respects the same as the 4,000 acres described in the defendant's answer, and of which they admitted themselves to be possessed.

The plaintiff offered in evidence a deed from the comptroller of this State to Archibald McIntyre, dated May 30, 1836, purporting to be given in pursuance of a sale of lands made in March and April, 1834, for non-payment of taxes duly assessed in the years 1828 and 1830. The premises described in the deed consisted of several tracts of land, parts of township number forty-seven, 6,000 acres to be laid out at the expense of McIntyre, being (as stated in the deed) taxed and returned as the *north-east quarter* of township number forty-seven, together with the same quantity, 6,300 acres, to be laid out on what was taxed and returned as the *north-west quarter*, and the same quantity, 6,300 acres, taxed and returned as the *south-east quarter* of the same township forty-seven. To the reading this deed in evidence the defendant objected upon the ground that it did not appear that the statute requirements, authorizing the sale and conveyance of the premises by the comptroller, had been complied with. The objection was overruled. The defendants excepted and the deed was read in evidence.

It appeared from evidence, on the part of the plaintiff, that some twenty years before the commencement of this action persons claiming title under the comptroller's deed to McIntyre, entered upon the south-east portion of said township near the south-east corner thereof, made valuable improvements thereon, and cleared in all about 400 acres, and that no other portion of that township had been cleared or cultivated ; that McIntyre, and those claiming under him, had, in 1836 and 1837, and from 1843 to 1846, inclusive, paid taxes

on the north-west quarter of that township, and had, some ten or twelve years prior to the commencement of this action, caused that quarter to be surveyed and divided into separate lots. The plaintiff then deduced from McIntyre's title, as derived from the comptroller, title to five sixteenth undivided parts of the 4,000 acres of land described in his complaint, and gave evidence tending to prove it to be the same 4,000 acres described in the defendants' answer, and tending also to prove that it lay within township forty-seven, and adjoining the north line thereof. Defendants moved for a nonsuit, upon the ground that the title to the whole township was vested in Effingham Laurence; that the defendants were not shown to be in possession of any land south of the north line of township forty-seven, and that plaintiff had failed to show title in himself, through the deed from the comptroller, as preliminary proofs of the facts authorizing him to sell had not been given. The motion was denied, and the defendants excepted. The defendants gave evidence tending to prove that the premises in controversy consisted of a gore of land all of which lay north of township number forty-seven.

The following alleged defects also appeared in the proceedings upon which the comptroller's sale was founded: The return of the collector of the tax for 1828 was headed "The non-resident real estate in the town of Newcomb, county of Essex, and State of New York, as taken by the assessors June 28, 1828." Then followed township forty-seven, divided into twenty-four lots of 1,000 acres each, with a valuation different for each lot, a column with figures opposite each lot, and then an affidavit without a venue, sworn to before the county treasurer, as follows: "I, Daniel Bissell, collector of the town of Newcomb, do swear that the sums mentioned in the preceding account remain due and unpaid, and that I have not, upon diligent inquiry, been able to discover any goods or chattels belonging to or in the possession of any of the persons charged with or liable to pay the said respective sums, whereon I could levy the same." This return was claimed to be defective, in that it did not state that it was a transcript

of the assessment roll, or that the figures were taken there-from, or that the sums claimed to be due were for taxes assessed against the property; also, that township forty-seven was not subdivided into lots. The affidavit and the collect-or's return for 1830 was also without a venue. The col-lector's return for 1830, was headed " An account of the names of the several persons charged with taxes of the year 1830, and the sums remaining due thereon from each of them, respectively." Following this was " Totten & Cross-field's purchase, township forty-seven," which was subdivided into quarters of 6,300 acres each, with value, and other figures, claimed to be the tax, in columns, opposite each quar-ter. It did not appear by any statement in the return, affidavits, or treasurer's certificate that the lands were non-resident. The assessment rolls were not given in evidence.

The comptroller sold the four quarters of the township separately, for the taxes of both years.

The two notices required to be published by the comptroller, by the statute in force at the time of the sale (1 R. S., pt. 1, chap. 13, tit. 3, art. 3), appeared not to have been published for six weeks, at least six months before the expiration of the two years allowed for redemption. The notice pub-lished described the land as in township number forty-eight.

The referee found that the plaintiff was and is the owner in fee and in possession of the premises described in his com-plaint, upon which the defendants, before the commencement of this action, wrongfully entered and erected houses, and retain the possession. That there was no gore of land north of and adjacent to the north line of township forty-seven and the tract known as McComb's purchase, and that the land in controversy is within and a part of township forty-seven ; and as a conclusion of law, found and decided that the plaintiff was entitled to judgment for the recovery of the premises described in the complaint. To each of these findings, as well as the conclusion of law, the defendants duly excepted.

Further facts appear in the opinion.

*A. C. Hand* for the appellants. This being an action of ejectment, plaintiff could only recover by the strength of his own title. (Rem. on Eject., 12; Adams on Eject., 32; Tyler on Eject., 71, 72, 784; *Smith* v. *Lorillard,* 10 J. R., 339; *Hill* v. *Draper,* 10 Barb., 484; *Bloom* v. *Burdick,* 1 Hill, 130; 37 Barb., 329; 8 Bosw., 528; *Johnson* v. *Elwood,* 53 N. Y., 431; *Hunter* v. *Trustees, etc.,* 6 Hill, 411; 2 R. S., 303, § 3; 6 Pet., 441.) No legal assessment of the land was shown. (1 R. S., 391, §§ 12–14.) The affidavits of the collector of taxes for 1828, 1830 and 1831 were defective, because they had no venue. (1 R. S., 399, § 10; *Dane* v. *Morse,* 18 Barb., 394; *Cook* v. *Staats,* 6 How., 407; *Striker* v. *Kelly,* 2 Den., 323; *Johnson* v. *Elwood,* 53 N.Y., 431; 5 Park. Cr., 101.) The collector failed to comply with the statute in making his return to the treasurer. (1 R.S.,399,§ 10; *Curtis* v. *Follett,*15 Barb.,337, 344.) The treasurer's affidavit did not comply with the statute. (1 R. S., 402, § 26.) The notice to redeem was totally defective. (*Dike* v. *Lewis,* 4 Den., 237; S. C., 2 Barb., 344; *Tallman* v. *White,* 2 Comst., 66; Blackwell on Tax Titles, chap. 15, Nos. 8, 9, 12; *Doughty* v. *Hope,* 3 Den., 574; 1 Comst., 79; *Westbrook* v. *Willey,* 47 N. Y., 457; *Bunner* v. *Eastman,* 50 Barb., 639.) The deed of the comptroller is only evidence that the sale was regular. (1 R. S., 412, § 81.) In making such sales the statute must be strictly pursued. (*Beetman* v. *Bigham,* 1 Seld., 366; *Pallman* v. *White,* 2 Comst., 66; *Sharp* v. *Spier,* 4 Hill, 76; *Bellinger* v. *Gray,* 51 N. Y., 610; *Westfall* v. *Preston,* 49 id., 349; *Cruger* v. *Dougherty,* 43 id., 107, 124.) Plaintiff was not even in constructive possession of the land in question. (*People* v. *Livingston,* 8 Barb., 263; *Lane* v. *Gould,* 10 id., 254, 257; *Jackson* v. *Woodruff,* 1 Cow., 286; *Barlow* v. *Draper,* 5 Duer, 130, 140; Code, §§ 82, 83; *Munro* v. *Merchant,* 28 N. Y., 9; *La Frambois* v. *Jackson,* 8 Cow., 603; *Sharp* v. *Brandon,* 15 Wend., 597; *Van Rensselaer* v. *Radcliff,* 10 id., 653; *Jackson* v. *Schoonmaker,* 2 J. R., 234; *Harker* v. *Berbeck,* 3 Burr., 1556.) The grant being described by courses and distances only, the grantee can claim no more. (*Waugh* v. *Waugh,* 28 N. Y., 94.) The fact that the State had given

a tax deed did not stop it from questioning that deed. (*Delafield* v. *State of Ill.*, 2 Hill, 159; S. C., 26 Wend., 192; 26 Paige, 527; *Sparrow* v. *Kingman*, 1 Comst., 242; *Averill* v. *Wilson*, 4 Barb., 180.)

*R. W. Peckham* and *G. F. Fowler* for the respondent. The comptroller's deed was presumptive evidence of regularity in the sale, and this presumption attached as to the whole tract. (*Finley* v. *Cook*, 54 Barb., 9, 30; *Munro* v. *Merchant*, 28 N. Y., 1–42; *Pierce* v. *Hall*, 41 Barb., 142–144; *Woodruff* v. *Woodruff*, 52 N. Y., 53.) Defendants cannot set up any irregularity in the tax proceedings, or want of title in the plaintiff by reason thereof. (*Jackson* v. *Harder*, 4 J. R., 202; *Hopkins* v. *Mason*, 61 Barb., 469; *Smith* v. *Lorillard*, 10 J. R., 338; *Jackson* v. *Schauber*, 7 Cow., 187; *Jackson* v. *Walker*, id., 637; *Miller* v. *Decker*, 40 Barb., 228, 231; *Downing* v. *Miller*, 33 id., 386; *Clute* v. *Voris*, 31 id., 511; *Stevens* v. *Hauser*, 39 N. Y., 302; *Gaines* v. *New Orleans*, 6 Wall., 642, 713.) Before defendants can attack the comptroller's deed they must connect themselves with the title of the original owner. (*Knox* v. *Jenks*, 7 Mass., 488, 491; *Leggett* v. *Rogers*, 9 Barb., 406, 435; *Hill* v. *Draper*, 10 id., 454.) The deed from the comptroller to plaintiff's grantors was, in fact and in law, a deed from the State or the people thereof. (*Leggett* v. *Rogers*, 9 Barb., 406; *Bank of Utica* v. *Mersereau*, 3 Barb. Ch., 578; Laws 1855, 793, § 63.) The State is estopped from denying that the grantees derived a good title. (*Parmelee* v. *R. R. Co.*, 7 Barb., 621; *Jackson* v. *Murray*, 7 J. R., 5; *Peck* v. *Burr*, 10 N. Y., 294, 297; *People* v. *R. and S. R. R. Co.*, 15 Wend., 113; *People* v. *Manhattan Co.*, 9 id., 351; *Comm.* v. *Heirs of Andre*, 3 Pick., 224; *Comm.* v. *P. Props.*, 10 Mass., 155; *People* v. *Soc. P. G. in F. P.*, 2 Paine, 545; *U. S.* v. *Collier*, 3 Blatch., 325, 341; *Carver* v. *Jackson*, 4 Pet., 187.) Defendants are bound by the conveyance and the recitals therein from the State to plaintiff's grantor. (1 R. S. [5th ed.], 934, § 99; *Denn* v. *Cornell*, 3 J. Cas., 174; *Sinclair* v. *Jackson*, 8 Cow., 543, 586; *Carver* v. *Jackson*, 4 Pet., 1; *Jack-*

*son* v. *Parkhurst*, 9 Wend., 209; *Van Rensseluer* v. *Kearney*, 11 How. [U. S.], 297, 322, 323; 3 R. S. [5th ed.], 30, §§ 163, 164; *Bank of Utica* v. *Mersereau*, 3 Barb. Ch., 528, 529; *Moseley* v. *Moseley*, 15 N. Y., 334; *McBurney* v. *Cutler*, 18 Barb., 204.)

GRAY, C. The issues presented by the pleadings involve two propositions: First. Whether the 4,000 acres of land, described alike in the complaint and answer, are, as the plaintiff alleges, in the north part of township number forty-seven; or whether they are, as alleged by the defendants, a gore of land wholly north of, and adjacent to the north line of that lot. Second. Whether, if they are as the plaintiff alleges within that township, the plaintiff has shown himself to be vested with the title to them. The first proposition is one of fact, upon which the evidence is fairly conflicting, and has been disposed of, as such, in favor of the plaintiff, and is not reviewable here. In determining the second proposition we may assume, for the purpose of giving the plaintiff the full benefit of every fact proved by him, that the defendants entered upon the premises without pretence of right, as did the defendant in *Jackson* v. *Harder* (4 J. R., 203, 211) (a fact not established), even then a stranger to the title would have no right to maintain ejectment against them. In such case, the party seeking to oust them must, if he relies upon prior possession alone as evidence of his title, prove, not by hearsay or other inadmissible evidence, but by evidence which, if objected to, is competent, a possession from which a title may be inferred; or if he rely upon written evidence of his title, it must be preceded with such preliminary proof (if any be necessary), as will entitle the proof offered to be read, and, by one or the other character of evidence, establish a *prima facie* title to the premises in controversy. The plaintiff's case depending upon his possession and the possession of those under whom he claims, standing alone, rests upon no foundation. The township contains 25,200 acres; the land, the title to which is in controversy, consists of 4,000 acres, stretched along the

whole northern boundary of that township. The plaintiff's possession covers, at most, only about 400 acres, situate in the south-east part of the same township, miles distant from the disputed territory. His case, resting solely upon the conveyance purporting to have been made by the comptroller, is not improved. No case has gone so far as to hold that a party in possession, however wrongful, can be compelled to surrender it to another who cannot produce at least competent *prima facie* evidence of his title to what he claims. The comptroller's deed of May 1836, upon which his claim of title, so far as it depends upon written evidence, rests, is, at best, merely evidence of the regularity of the sale itself, which, without proof of the proceedings prior to and authorizing the sale, afforded no evidence of his right to sell, and hence, conveyed no title to the premises described in it. (*Beekman* v. *Bigham*, 5 N. Y., 366, 367, 368.) To this defendants, though strangers to the title, had the right to object. (*Sinclair* v. *Jackson*, 8 Cow., 543.)

The act of 1860 applies, in terms, to conveyances to be thereafter executed, and hence, does remove the objection to the deed offered in evidence. (Sess. L., 1860, p. 352.) This deed, notwithstanding it was executed without authority, and afforded no evidence of title, gave color to the plaintiff's claim of title to all the land of which he, or those under whom he claimed, was in the actual or constructive possession. (*Munro* v. *Merchant*, 28 N. Y., 9.) In this case the actual possession extended over about 400 acres. The premises purporting to have been conveyed by the comptroller's deed consisted of three several large tracts of land of 6,300 acres each; one to be laid out in the north-east quarter, one in the north-west quarter, and the other in the south-east quarter of township number forty-seven, the three parcels containing, in all, nearly 19,000 acres. The plaintiff's possession was in or near the south-east corner of the 6,300 acres which, by the deed, were to be laid out in that corner of that town; this possession, if it could by possibility be considered to have been extended, by construction, to the whole 6,300 acres, of

which it was a part, cannot be extended to other subdivisions of the same town; even though fuel and fencing timber had been taken from "so large a tract of forest," it could not be considered as constructively in possession of the occupant of 400 acres in so distant a location, though included in the same deed, which gives color of title to what was in his actual possession; and, for the same reason, he cannot be regarded as in possession of the north-east and north-west quarters of township forty-seven, along the north line of which the 4,000 acres in controversy are situate, and thereby, under the act of 1860, be entitled to the presumption that all requisite proceedings, prior and subsequent to the comptroller's sale, were had, and thus validate his deed.

I am, therefore, of opinion that the judgment of the Supreme Court should be reversed, and a new trial ordered.

EARL, C. The plaintiff claims the land in controversy as being the northerly portion of township number forty-seven, in Totten and Crossfield's purchase. The defendants claim that the land is not in that township, but that it is a gore lying north of that township, and between it and the south line of Macomb's purchase. The referee found, upon sufficient evidence, that there is no such gore, and that the north line of township number forty-seven is a portion of the southerly line of Macomb's purchase. The defendants claim the land under a patent from the State, dated May 29th, 1864, in which the land conveyed is described as a gore of unsold land, lying north of and adjacent to township number forty-seven. As the State owned no such gore, nothing was conveyed by the patent. But the defendants put in issue plaintiff's title, and in order to recover, therefore, he was bound to show a title good as against them. This he claims to have done, and the question for us to determine is whether, upon the case as it is presented to us, it appears that he did.

The plaintiff properly put in evidence the Indian title which finally resulted in a patent to Laurence in 1792, for the purpose of locating and describing the land, and for the

purpose, also, of showing title out of the State, as the State could not sell its own land for the non-payment of taxes. While the title under that patent does not appear to have been claimed or heard of for upwards of seventy-five years, we may assume that it remained out of the State. The patent was granted upon condition that within the term of seven years there should be an actual settlement made on the tract for every six hundred and forty acres thereof, and that otherwise the patent and estate granted should cease, determine, and be void. No such settlements were made and hence the State could have claimed the forfeiture. But it does not appear to have done so, but appears to have treated the patent as in force and hence for the purpose of this action the title may be treated as having passed and remained out of the State.

The plaintiff must therefore rest his claim entirely upon the tax title, and we will inquire whether he showed a valid tax title, and whether, if there was any defect in it, the defendants were in a condition to assail it.

This township, prior to the tax sales, was never subdivided. It contained 25,200 acres. The plaintiff, as I understand it, claims under a tax title based upon assessments made in 1828 and 1830. In the former year, the township was, upon the assessment roll, divided into twenty-four lots of 1,000 acres each, and each of those lots was separately assessed and taxed. In the latter year it was assessed and taxed in quarters of 6,300 acres each.

The defendants claim that these were illegal assessments. This lot, township number forty-seven, was non-resident land and was assessed as such. It was not subdivided and hence it was the duty of the assessors to assess it as a whole lot, by its number alone, referring to the patent. (1 R. S., 391, §§ 11, 12, 13.) The directions of the statute are plain, and should have been followed. The statute (1 R. S., 399, § 10), provides that if any of the taxes mentioned in the tax list annexed to his warrant shall remain unpaid, and the collector shall not be able to collect the same, he shall deliver to the county

treasurer an account of the taxes so remaining due, and upon making oath before the county treasurer, or in case of his absence, before any justice of the peace, that the sums mentioned in such account remain unpaid, and that he has not, upon diligent inquiry, been able to discover any goods or chattels belonging to or in the possession of the person charged with or liable to pay such sums whereon he could levy the same, he shall be credited by the county treasurer with the amount thereof. In an attempted compliance with this statute, the collector made a return each year to the county treasurer, but neither was legally verified. There was what purported to be an affidavit attached to each return, but it had no venue, and hence was a nullity. (*Lane* v. *Morse*, 6 How., 394; *Cook* v. *Staats*, 18 Barb., 407; *Vincent* v. *People*, 5 Park. Cr., 88.) Every affidavit should show on its face, that it was taken within the jurisdiction of the officer who certifies it. These returns and affidavits of the collector were a necessary basis for the subsequent sale by the comptroller. (*Striker* v. *Kelly*, 2 Denio, 323; *Johnson* v. *Elwood*, 53 N. Y., 431.)

I am of opinion also that the return of the collector for the year 1828 was insufficient. He was required to deliver to the county treasurer an account of the taxes mentioned in the tax list annexed to his warrant, which remained unpaid. The return, as made, first contained a heading as follows: "The non-resident real estate in the town of Newcomb, county of Essex and State of New York, as taken by the assessors June 28th, 1828." Then follows the twenty-four lots of 1,000 acres each, with a valuation, and another column of figures opposite each, and then this affidavit sworn to before the treasurer: "I, Daniel Bissell, collector of the town of Newcomb, do swear that the sums mentioned in the preceding account remain due and unpaid, and that I have not upon diligent inquiry, been able to discover any goods or chattels, belonging to or in the possession of any of the persons charged with, or liable to pay the said respective sums, whereon I could levy the same, so help me God." It is not stated that

the account is a transcript of the assessment roll, nor that the figures were taken from the assessment roll, nor that the sums claimed to be due were for the taxes assessed against the property. (*Curtiss* v. *Follett*, 15 Barb., 337.)

It is provided (1 R. S. 403, § 26) that whenever any county treasurer shall receive from a collector an account of unpaid taxes assessed on the land of non-residents, such county treasurer shall compare the same with the original assessment roll, and if he finds it to be a true transcript thereof he shall add to it a certificate showing that he has examined and compared the account with the assessment roll and found the same to be correct, and after crediting the collector with the amount, shall before the first day of April next ensuing, transmit the account and collector's affidavit to the comptroller with a certificate that he has compared the account with the entries of the same taxes in the original assessment roll and has found the same to be a true transcript of such roll. There was nothing in the return of the collector or in the return of the county treasurer for the year 1830, showing that the taxes for that year remaining unpaid were assessed upon non-resident lands and hence they did not lay a foundation for a sale by the comptroller.

The statute (1 R. S., 408, § 52), provides that whenever any tax charged on lands returned to the comptroller shall remain unpaid for two years, he shall proceed to advertise and sell such land. He must advertise and sell the land by lots, and descriptions, as returned to him; section 63 provides that on the day of sale he shall sell so much of each parcel assessed as will be sufficient to pay the taxes, interest and charges; and a subsequent section provides, that if no person shall bid the sum required he shall bid in the land for the State. On the day of this sale the comptroller proceeded to sell and sold the whole township in four undivided quarters, separately, for the tax of both years claiming the same amount of tax to be due on each quarter, to wit, the sum of twenty-four dollars and seventy-seven cents, and yet the tax of 1828 was assessed upon twenty-four separate lots of 1,000 acres each, and the tax

was not the same upon each lot.   The sale for the tax of 1828 could not be made in quarters, but should have been made in lots, as assessed.   Such a sale was irregular and unauthorized and it shows the impropriety of the original assessment.   The township should have been assessed in one body, and then on the day of sale it should have been put up in one body, and unless some person would pay the tax for less than the whole, it should have been struck off in one body or bid in for the State.

All of these provisions of the statute are perfectly plain and should have been strictly followed by the public officers.   It has been settled by repeated adjudications, for very wise reasons, that a tax title cannot be upheld unless there has been a substantial and indeed a rather strict compliance with the provisions of law as to the assessment of the tax and a sale for non-payment thereof. (*Sharp* v. *Speir*, 4 Hill, 76; *Doughty* v. *Hope*, 3 Denio, 249; S. C., 1 N. Y., 79; *Striker* v. *Kelly*, 2 Denio, 323; *Beekman* v. *Bigham*, 5 N. Y., 366; *Tallman* v. *White*, 2 id., 66; *Cruger* v. *Dougherty*, 43 id., 117; *Westbrook* v. *Willey*, 47 id., 457; *Westfull* v. *Preston*, 49 id., 349; *Bellinger* v. *Gray*, 51 id., 600; *Newell* v. *Wheeler*, 48 id., 487.)

The statute provides (1 R. S., part 1, chap. 13; title 3, art. 3) that any person interested may redeem the land sold at any time within two years after the last day of sale; that the comptroller shall, at least six months before the expiration of the two years, cause to be published at least once a week, for six weeks successively, in all the public newspapers printed in this State, and in such form as he shall deem best calculated to give general notice, a notice that unless the lands sold shall be redeemed by a certain day they will be conveyed to the purchaser; "that the comptroller shall also, at least six months before the expiration of the two years, prepare a separate notice for each county in which there shall then appear to be any lands sold for taxes and unredeemed; specifying particularly every parcel remaining unredeemed and the amount necessary to redeem the same,

calculated to the last day on which such redemption can be made;" and that if the lands shall not be redeemed within the two years, the comptroller shall execute a conveyance which shall be conclusive evidence that the sale was regular. There was an attempt to publish the two notices required by the statute, but neither was published for six weeks at least six months before the expiration of the two years. This defect has been held to invalidate a tax title. (*Doughty* v. *Hope*, 3 Den., 249; S. C., 1 Coms., 79; *Westbrook* v. *Willey*, 47 N. Y., 457.)

But even if the notice had been published for the requisite time, it was defective in the description of the land. It described the land as in township number forty-eight, and hence there was no valid notice to redeem. (*Dike* v. *Lewis*, 2 Barb., 344; S. C., 4 Den., 237; *Tallman* v. *White*, 2 Coms., 66.)

The statute (1 R. S., 412, § 81) provides that the comptroller's deed should be conclusive evidence that "the sale was regular," that is that the notice of sale and the auction were regular. But the deed furnishes no evidence that the proceedings prior and subsequent to the sale were regular, and these remained open to inquiry and assault. (*Doughty* v. *Hope* and *Westbrook* v. *Willey*, *supra*.) By chapter 183 of the Laws of 1850 it was provided, by an amendment of section 81 above referred to, that the comptroller's deed should be presumptive evidence (liable, however, to be rebutted by any legal evidence), that all the proceedings prior to the conveyance had been regular. In 1855 this chapter was repealed (chapter 427, Laws of 1855), and section 65 of the latter chapter contained a similar provision. In 1860 (chapter 209 of that year) section 65 of chapter 427 of the Laws of 1855 was amended so as to read as follows: "Such conveyance shall be executed by the comptroller, under his hand and seal, and the execution thereof shall be witnessed by the deputy comptroller, surveyor-general or treasurer, and all conveyances hereafter executed by the comptroller, of lands sold by him for taxes, shall be pre-

sumptive evidence that the sale and all proceedings prior thereto from and including the assessment of the land, and all notices required by law to be given previous to the expiration of the two years allowed to redeem, were regular according to the provisions of this act and all laws directing or requiring the same, or in any manner relating thereto. But where the person or persons claiming title under such conveyance or the grantees or assignees of such persons, shall be in possession of the lands described therein, either by himself or themselves, or his or their grantees, assignees, agents, tenants or servants, then such conveyance shall be presumptive evidence of the facts above stated, whatever may be the date of such conveyance;" and this is claimed by the plaintiff to be the law as to the effect of the comptroller's deed applicable to this case. If this be conceded, if I am right in the views above expressed, as to the defects in the various proceedings prior to the conveyance, the statute presumption of regularity has been overcome by competent proof of the facts.

The only remaining question to be considered is whether the defendants who have shown no title to the land are in a situation to attack the tax title claimed by the plaintiff. It is claimed on the part of the plaintiff that the defendants are mere intruders, and cannot therefore assail his tax title.

By virtue of the tax sale the plaintiff either has a valid title or he has none. If all the steps required by law were taken to authorize a conveyance by the comptroller, the plaintiff's title is valid. If such steps were not taken, then the title of the owners at the time of the tax sale was not divested, and the plaintiff acquired no title. (*Johnson* v. *Elwood*, 53 N. Y., 431.)

It follows, if I am right in the views above expressed as to defects in the tax proceedings, that the plaintiff had abso-lutely no title, and that both parties appear before us without any title. The plaintiff cannot, therefore, in any aspect of the case, recover in this action upon the strength of his title. We must, then, consider whether he can recover upon the

ground of a prior possession. He admits the possession of the defendants at the time of the commencement of the suit; and if he had shown a prior possession, then, the defendants entering upon that possession without right, would have been mere intruders and trespassers, and could not defend against the plaintiff; but if the land was vacant and the defendants entered they did no wrong to the plaintiff, committed no trespass upon him, and were in no sense intruders upon him. The plaintiff never had possession of the land claimed by him. Here was a lot of over 25,000 acres, containing nearly forty square miles; it was sold at the tax sale in quarters and conveyed in quarters; a small portion, about 400 acres of the south-east quarter, only, was improved and actually possessed. This possession was some miles distant from the land in question. There was never any actual possession of the north-east or north-west quarter in which the lands claimed were located. But it is claimed by the plaintiff that his possession in the south-east quarter, under his deed claiming title to the whole, gave him constructive possession of the whole. This claim is not sustained by any authority and not well founded. This township of over 25,000 acres was not one farm'; it never would and never could be used as such; the balance of the whole township was not and could not be used in connection with the cleared portion for any purpose appertaining thereto. The farthest that any case has gone which has come under my notice is to hold that where a person claims title under a deed, and thus has color of title to a farm or a lot of proper size to be possessed for a farm, or to be managed or used in a body, according to the custom and business of the country in which it is situated, and is in possession of a portion of the same, then he is constructively in possession of the whole. This rule has never been applied to a tract of land containing thousands of acres. If it would apply to a case like this then it would apply to a tract of 100,000 acres claimed under a deed giving mere color of title of which the claimant was the actual possessor of but one acre in the remotest corner thereof. The case which carried

the rule farther than any other is *Munro* v. *Merchant* (28 N. Y., 9). In that case there was in the tract claimed, under a written title, 1,500 or 1,600 acres; upward of 300 acres had been cleared, and the uncleared portion had been used extensively for cutting timber trees, to be drawn and manufactured into lumber upon the cleared portion and elsewhere, and for fencing timber and firewood. This timber and wood had been taken indiscriminately from the parts of the tract where it could be most conveniently got at. The tract was not so large that it could not be used in one body. It was held that the claimants under the deed were in possession of the whole tract, within the rules of law as to adverse possession. The rule is one of convenience. Possession is considered a valuable right in all controversies about land. According to the general custom of the country it is not generally practicable to have actual possession of the whole of a farm or large lot of land. Portions are left uncleared and uninclosed, to be cleared for use with the balance, or to be used in connection with the balance for fencing or building timber, or firewood; and hence in such cases it has been considered a convenient and just rule that a person having color of title, and actually possessing a part, shall be deemed constructively in possession of the whole. But the reason of the rule does not apply to large tracts of land which can never be used in one body. The reason of the rule is well stated by Judge WOODRUFF in *Jackson* v. *Woodruff* (1 Cowen, 276), as follows: " Possessions thus taken under a claim of title are generally for the purpose of cultivation and permanent improvements. It is generally necessary to reserve a part for wood land. Good husbandry forbids the actual improvement of the whole. The possessions are usually in the neighborhood of others; the boundaries are marked and defined. Frequent acts of ownership in parts not cultivated give notoriety to the possession. Under such circumstances there is but little danger that a possession of twenty years will be matured against the right owner; if it occasionally happens it will arise from a want of vigilance and care in him who has

the title.   It is believed that no well founded complaint can be urged against the operation of the principle; but the attempt to apply the same rule to cases where a large tract is conveyed, will be mischievous indeed.   Suppose a patent granted to A. for 2,000 acres; B., without title, conveys 1,000 of the tract to C., who enters under the deed, claiming title, and improves one acre only; this inconsiderable improvement may not be known to the proprietor, or if known, is disregarded. for twenty years.   Could it be gravely urged that here was a good adverse possession to the 1,000 acres?   If it could I perceive no reason why the deed from B. to C. might not include the whole patent, and after the lapse of twenty years equally divest the patentee's title to the whole, for there would exist an actual possession of one acre, with a claim of title to all the land comprised in the patent.   No such doctrine was ever intended to be sanctioned by the court."   The rule, as thus expounded, has been embodied in the statute as to the time of commencing actions for the recevery of real property. (Code, § 83.)

The fact that the claimants of this land under the tax deed caused some surveying to be done upon this land and paid some taxes thereon, does not help the plaintiff.   Such acts have never been held to show a possession for any purpose, and have no bearing upon the question of constructive possession involved in this case.   It is claimed, however, by the plaintiff, that inasmuch as the referee has found that he had the prior possession the defendants are in no position to contest it upon this appeal.   The referee's finding was, doubtless, based upon his erroneous view as to constructive possession following the legal title.   There was certainly no proof of such possession, and the question is raised for our consideration by the motion to nonsuit, and the exceptions to the findings of the referee.

It is further claimed that the defendants are estopped from disputing plaintiff's title from the State because they took a deed from the same grantor.   This is not true in fact.   Defendants' deed does not cover the land in dispute, or any land in

township number forty-seven. If the doctrine of estoppel were otherwise applicable, it cannot apply for this reason.

The result is, that the plaintiff has shown neither title nor possession to the land in controversy. The defendants have possession conceded to them in the complaint, and the action is to take that possession from them. While the defendants are without title their possession is good as against the plaintiff.

Without, therefore, examining other questions discussed by the learned counsel for appellants, I am of opinion that the judgment should be reversed and new trial granted, costs to abide event.

All concur.

Judgment reversed.