STEPHEN C. JOHNSON, Appellant, *v.* ALEXANDER ELWOOD, Respondent.

To maintain an action for the recovery of specific articles, formerly part of the realty but severed therefrom and converted by a wrong-doer, plaintiff must show that he was in the actual or constructive possession of the land when the severance occurred. A constructive possession for this purpose only follows a legal title; it cannot arise upon a void conveyance. The statutory presumption (§§ 63, 65, chap. 427, Laws of 1855) of the validity of a title, founded upon the comptroller's deed of lands sold for taxes, may be met and overthrown by evidence of any irregularity in the proceedings.

In an action to recover possession of a quantity of logs alleged to have been wrongfully cut and converted by defendant, plaintiff claimed title to and constructive possession of the premises under a comptroller's deed upon sale for taxes of the years 1852, 1853 and 1854. Defendant produced papers identified as the original assessment rolls of the town for those years, to which were appended certificates in the form prescribed by law prior to the act of 1851 (chap. 176, Laws of 1851), but no affidavit in the form prescribed by that act. *Held*, that the lack of verification made all the subsequent proceedings a nullity; that plaintiff acquired nothing by his deed and could not maintain his action.

(Argued May 12, 1873; decided September 23, 1873.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, in favor of plaintiff, entered upon an order denying motion for new trial and directing judgment on verdict.

This action was brought to recover the possession of certain logs cut by the defendant and removed by him from premises in the town of Colchester, Delaware county. The plaintiff claimed title to the land under a comptroller's deed, dated March 27, 1862. The land was sold by the comptroller in November, 1859, for the taxes of the years 1851, 1852, 1853. The further facts appear in the opinion. The court directed a verdict for the defendant, which was rendered accordingly. Exceptions were ordered to be heard at first instance at General Term.

*Samuel Hand* for the appellant. The comptroller's deed of the premises vests in plaintiff, *prima facie*, an absolute estate in fee simple, and is presumptive evidence that the sale of the land was regular. (Laws 1855, chap. 427, §§ 63, 65, p. 793 ; Blackwell on Tax Titles, 79.) Before defendant could defeat the recovery in this action he must show a better title in himself than plaintiff had shown. (*Foster* v. *McDevitt*, 9 Watts, 341, 344; *Foust* v. *Ross*, 1 Watts & Serg., 501, 505 ; *Dikeman* v. *Parrish*, 6 Barr., 210, 223 ; *Troutman* v. *May*, 9 Casey, 455, 462 ; *Shearer* v. *Woodman*, 10 Barr., 512; Blackwell on Tax Titles, 95.) The statute (Laws of 1851, chap. 176, § 8) was directory and not jurisdictional as to the

formality of a verification. (*Parish* v. *Ogden*, 35 N. Y., 462; *Buff. R. R. Co.* v. *Suprs. Erie Co.*, 48 id., 100, 106; *People* v. *Cook*, 14 Barb., 290, 293; *Torrey* v. *Millbury*, 21 Pick., 67.)

*William Youmans, Jr.*, for the respondent. Plaintiff's title is void under the comptroller's deed on account of defects in the assessment and tax rolls. (Laws of 1851, chap. 176, § 8; *Van Rensselaer* v. *Witbeck*, 7 N. Y., 517; 2 Denio, 323; 2 Barb., 113; *Sharp* v. *Spiner*, 4 Hill, 67–86.) Every statute authority in derogation of the common law, as to the transfer of title of real estate, must be strictly pursued or the title will not pass. (*Sharp* v. *Spiner*, 4 Hill, 76; *Hoyt* v. *Dillon*, 19 Barb., 649.)

ANDREWS, J. The action for the recovery of specific chattels is founded upon the right of property, and to maintain it the plaintiff must show that he is the owner of the property claimed or that it has been wrongfully taken from his possession by the defendant. It is well settled that it lies for things which were part of the realty, but which have been severed therefrom by a wrong-doer and converted to his use. The owner of the land does not lose his title by the severance, but his ownership attaches to the property in its changed character, and it vests in him as a chattel interest, and he can pursue it by the ordinary remedies given by law to the owner of personal property. It is as an incident to the right to the realty that the owner may claim the severed property. A plaintiff, whose only claim to the property severed vests upon his interest in the land from which it was taken, must show that he was in the actual or constructive possession of the land when the severance occurred. (*Cresson* v. *Stout*, 17 J. R., 116; *Schermerhorn* v. *Buell*, 4 Den., 422; *Moody* v. *Whitney*, 34 Me., 563; *Riley* v. *The Boston Water Power*, 11 Cush., 11.) The plaintiff was never in the actual possession of the lot from which the logs were taken. His title to the land rests upon the comptroller's deed exe-

cuted on the sale for taxes in 1862. It is undisputed that
at that time the lot was unfenced, wild and unoccupied,
and there were no acts of ownership on his part after the
purchase beyond the appointment of an agent, a single entry
on the land, and the payment of taxes. It was necessary,
therefore, for the plaintiff to show a constructive possession
of the land, and as the constructive possession follows the legal
title, if the deed from the comptroller was valid the right of
action was maintained. (*Van Rensselaer* v. *Van Rensselaer*,
9 J. R., 377; *Wickham* v. *Freeman*, 12 id., 183; *Hubbell* v.
*Rochester*, 8 Cow., 115.) If that deed was void the plaintiff
has no ground to stand upon. It did not divest the title of
the real owner, nor did it confer any right as against any one.
I agree that if possession had been taken under it, it might
have served as the foundation of a title by adverse possession,
and enabled the plaintiff to protect himself against mere tres-
passers and intruders. But possession never having been taken
under it, it would not support ejectment on an action for an
injury to the freehold, or a claim to property wrongfully sev-
ered from it. A constructive possession of the premises from
which the logs were taken cannot arise upon a void convey-
ance. This view is in accordance with what I understand to
be the settled law in this State. (*Bloom* v. *Burdick*, 1 Hill,
130; *Sharp* v. *Speir*, 4 id., 86; *Gardner* v. *Heart*, 1 Comst.,
528; *Tallman* v. *White*, 2 id., 66; *Dike* v. *Lewis*, 4 Den.,
237; *Doughty* v. *Hope*, 3 id., 594; *Beekman* v. *Bigham*, 1
Seld., 366; *Whitney* v. *Thomas*, 23 N. Y., 281.)

Cases from Pennsylvania have been cited holding that a
defective tax title is good as against a mere stranger and
intruder. This doctrine in that State may have had its origin
in the fact that from the peculiar condition of the local law it
had become impossible for purchasers on tax sales made prior
to 1815 to establish their title, and in the desire to protect
persons holding tax titles valid in fact, but which they could
not support by evidence. (Burnside, J., in *Shearer* v. *Wood-
man*, 10 Barr., 512.) It remains, therefore, to inquire whether
the judge at the circuit was justified in directing a verdict for

the defendant on the ground that the evidence established that there was an omission by the assessors to verify the assessment rolls for the years 1852, 1853 and 1854, upon which the taxes were extended against the lot in question, for the non-payment of which the sale under which the plaintiff claims was made. The production of the comptroller's deed by the plaintiff was *prima facie* evidence of his title to the premises. The statute of 1855 (Laws of 1855, chap. 427, §§ 63, 65) declares that it shall be presumptive evidence of the regularity of the sale and of all prior proceedings, including the assessment of the land. But this statute presumption may be met and overthrown by proof, and the defect alleged in the proceedings, viz., that the original assessment rolls were not verified by the assessors, if established, made all the subsequent proceedings a nullity. The supervisors were not authorized to levy the tax; the comptroller could not sell the land, and the plaintiff acquired nothing by his deed. (*Van Rensselaer* v. *Witbeck*, 3 Seld., 517; *Parish* v. *Golden*, 35 N. Y., 462; *Hatch* v. *The City of Buffalo*, 38 id., 276; *Tallman* v. *White*, 2 Comst., 266.)

I am of opinion, after careful consideration of the evidence, that it was clearly shown that the assessment rolls were not verified, and that the court was justified in directing a verdict for the defendant upon that ground. The defendant produced on the trial what purported to be the assessment rolls for the town of Colchester for 1852, 1853 and 1854. They were in the handwriting of one of the assessors. The taxes had been extended upon them by the clerk of the board of supervisors for those years respectively, and it was proved that they had been in possession of the board. This was directly proved as to the tax rolls of 1853 and 1854, and the extension of the tax on the roll of 1852 was proved to have been made by the clerk of the board for that year. The rolls for 1852 and 1853 were, some years before the trial, taken from the town clerk's office of the town, and the roll of 1854 was found in a box with other town papers and assessment rolls in a room said to have been formerly used as the town

clerk's office. No other rolls for the years in question were found in the office-of the town clerk. The tax rolls for the same years which had been delivered to the collector, with the warrant of the supervisors attached, were produced. These rolls were copies of the original assessment rolls, and corresponded with the rolls produced by the defendant in all respects, including the extension of the tax, except that no certificate of the assessors was attached to them. There was no affidavit of the assessor to the rolls produced by the defendant. To each was appended a certificate in the form prescribed by the law in force up to 1851. The certificate to the rolls of 1853 and 1854 were signed by the assessors, but there was no signature to the certificate to the roll of 1852. The certificates were not in the form of the affidavit prescribed by law. There can be no reasonable doubt that this proof, considered in connection with the statute defining the duty of assessors and boards of supervisors in relation to assessment and tax rolls, identified the instruments produced as the original assessment rolls of the town. It established beyond any reasonable doubt that they were the rolls upon which the supervisors acted in levying the tax. They had been deposited with the officer who was entitled to their custody after the tax had been extended upon them by the supervisors. In answer to this proof, Lindsley, one of the assessors, testified, on cross-examination, that he thought that in 1852 the assessors swore to the roll before they delivered it to the supervisor, and that he thought that the roll of 1853 produced was not the one handed to the supervisors in that year. Barber, another assessor, says, he rather thought the roll of 1854 was sworn to, but stated afterward that the assessors may have made oath to some of the rolls and may not. The assessors also stated that it was their custom, on the completion of the roll, to deposit a copy in the town clerk's office. The statute does not make it the duty of the assessors to do this. The fact that the rolls produced had been in the possession of the supervisors, and were those upon which the taxes were extended by the board, leaves no ground for an

inference that they were the rolls which had been left by the assessors with the town clerk, if in fact that was done.

The statute provides that the completed roll shall be delivered by the assessors to the supervisor of the town, who is to deliver it to the board of supervisors at their next annual meeting. The board is to extend the taxes upon the roll delivered to them and a copy is to be made by the supervisors. The original roll delivered to the supervisors and the copy to be made by them are all that are required to enable the supervisors to discharge their duty under the tax laws. The copy made in each year to which the collector's warrant was attached was produced, and also the roll the taxes on which were extended. No suggestion is made that more than one roll was delivered to the supervisors, and the inference is irresistible that the rolls proved were those which had been delivered to them in obedience to the direction of the statute. Without referring further to the testimony, I am of opinion that the jury would not have been justified in finding that the rolls produced were not the original assessment rolls of the town. The evidence to impeach them was of too slight and doubtful a character to warrant such a conclusion, and it would have been the duty of the court to have set aside a verdict founded upon it.

These views dispose of the case, and the judgment should be affirmed, with costs.

All concur, except CHURCH, Ch. J., not voting.

Judgment affirmed.