CHARLES KIRCHER v. HERMAN SCHALK.

A mortgagee of real estate, whose debt is due, but who has not entered into possession, cannot maintain replevin for a specific chattel, which the mortgagor, or his assigns, has severed and removed from the realty, and which, before severance, was a fixture or part of the realty, and subject to the mortgage.

In replevin. On writ of error to the Essex Circuit Court.

Argued at February Term, 1877, before BEASLEY, CHIEF JUSTICE, and Justices KNAPP, DIXON, and REED.

For the plaintiff in error, *W. S. Whitehead.*

For the defendant in error, *S. W. Morrow.*

The opinion of the court was delivered by

DIXON, J. The plaintiff below, Schalk, was first mortgagee of certain realty in the city of Orange. His mortgagor, Higgins, executed a second mortgage to Rogers, who foreclosed, and, at the sale, purchased the premises. Thereupon, Rogers entered, and removed a steam engine, which, as a fixture upon the realty, was subject to Schalk's mortgage, and sold it to the defendant below, Kircher. At the time of Rogers' entry, and the severance of the engine, Schalk's mortgage was due, but he had not taken possession. Under these circumstances, Schalk brought replevin against Kircher for the recovery of the engine, and the judge of the circuit having decided that the suit could be maintained, the defendant excepted, and, upon such exception, assigns error in this court.

The determination of the question involved in this case, makes necessary an examination of the grounds upon which one may maintain, on the strength of his title to land, an action for a specific chattel, which has become such by a wrongful severance from the realty.

One such ground clearly recognized in the law is, that property so severed from the realty as to become a chattel, belongs to the general owner of the land, and he may maintain a personal action for it. Modifications of this principle are, that where there are several estates in the land, he who has the first estate of inheritance, becomes the general owner of the chattel wrongfully severed, and that if there be a tenant for life, without impeachment of waste, and the property is such as he might lawfully have severed from the realty, he becomes general owner, and may sue specifically for it. *Berry* v. *Heard, Cro. Car.* 242; *Whitfield* v. *Bewit,* 2 *P. Wms.* 240; *S. C.,* 3 *P. Wms.* 267; *Pyne* v. *Dor,* 1 *T. R.*

55; *Nelson* v. *Burt*, 15 *Mass.* 204; *Schermerhorn* v. *Buell*, 4 *Denio* 422.

Another such ground is, that he who has an interest in the land, and the actual or constructive possession thereof at the time of severance, may maintain such a suit. *Cresson* v. *Stout*, 17 *Johns.* 116; *Johnson* v. *Elwood*, 53 *N. Y.* 431; *Stockwell* v. *Phelps*, 34 *N. Y.* 363.

These are, I think, the only general principles in the law, upon which can be supported a right of action for specific chattels growing out of title to the realty, of which the chattels, before severance, formed a part. In the cases not embraced within these rules, the plaintiffs set up rights to the chattels distinct from their rights to the land.

At the trial of the case now in hand, the judge maintained the plaintiff upon the ground which I have first stated, holding that, after maturity of the debt, the estate of the mortgagee becomes absolute, and he is regarded as sole and absolute owner of the premises. Such was the view of his rights, generally, entertained in the earlier periods of the common law, and such seems still to be the doctrine in that country where the common law had its birth, for, in a very recent case there, the mortgagee maintained trover for such chattels. *Holland* v. *Hodgson*, L. R., 7 C. P. 328.

But in this state, a different opinion of the legal status of a mortgagee is adopted, and one more consonant with his actual position, as fixed by the interference of equitable tribunals. " The mortgage is regarded, not as a common law convey- ance, on condition, but as a security for debt, the legal estate being considered as subsisting only for that purpose." *Shields* v. *Lozear*, 5 *Vroom* 496–503.

And there does not occur to me any use which, in a court of law, can be made of the legal estate of a mortgagee before foreclosure or entry, save the assertion and maintenance, by himself, his heirs or assigns, of a right to the possession of the land, continuing until payment of the debt. For all other purposes, the mortgagor is the legal owner. The mort-

gagee cannot, therefore, with propriety, insist upon being legally entitled to a remedy, the enforcement of which pertains to the general legal ownership of the land.

It was also urged, on the argument, that after the maturity of the debt, the mortgagor in possession is the mere tenant at will of the mortgagee, and that the possession of a tenant at will is construed to be the possession of the landlord, and that, therefore, the plaintiff could stand upon the second principle mentioned, as having an interest in the land and the constructive possession. Sometimes the tenure of a mortgagor so situated has been likened to that of a tenant at will; but there is much truth in Lord Denman's remark, in *Doe* v. *Barton et al.*, 11 *A. & E.* 307, where he said, " It is very dangerous to attempt to define the precise relation in which mortgagor and mortgagee stand to each other, in any other terms than those very words," and those who adopt the simile of a tenancy at will, have by no means evaded the dangers of the attempt. In one single sense, the mortgagor is tenant at will of the mortgagee : the latter may, at will, oust the former by ejectment, and even this is subject to the qualification that the mortgagor does not pay the debt, and so prevent the ouster. But, unlike estates known as tenancies at will, the interest of the mortgagor is a freehold of inheritance, in which his widow is entitled to dower, and out of which he may, by mere conveyance, create other estates of freehold. On the strength of his title, he may maintain ejectment without relying on the title of his mortgagee, from whom, indeed, his rights are not derived, and if the premises be vacant, he, as the owner, draws to himself the constructive possession, and thereon may support an action of trespass against a wrong-doer. The actual possession of one having such substantial interests, ought not, 1 think, to be regarded as the constructive possession of another, and, therefore, the plaintiff cannot stand upon this ground.

I am not unmindful of the fact that some risks to the mortgagee attend a denial of. his right to pursue the possession of chattels which have been severed from the realty.

We have decided, at this term, in Jackson v. Turrell, that if the severance has impaired the security, he may maintain an action at law against the wrong-doer, for the injury inflicted, but if the wrong-doer be irresponsible, it would certainly afford fuller remedy, if he might reclaim the chattel. But such a risk the mortgagee has assumed, for, if the removal be made before forfeiture, a right of reclamation would not, I presume, in New Jersey, since *Sanderson* v. *Den, ex dem. Price,* 1 *Zab.* 646, *a,* be contended for, nor, indeed, to vigilant mortgagees (and for such are the remedies of the law provided), need the risk be great. Before or after forfeiture, they may restrain apprehended waste, which would endanger their security, by injunction from chancery, and after forfeiture, they may institute ejectment at law, and therein prevent similar destruction, (*Rev. Prac.,* § 286,) so that, in this respect, the law is no worse than nature often is. A misfortune is found to be incurable, which, however, care might have prevented.

On the other hand, the inconveniences attendant upon the doctrine adopted at the circuit, are, in my judgment, more serious and less easily obviated. Mortgagors in possession of estates subject to mortgages past due, are constantly, for purposes of repair or profit, detaching and removing buildings, fixtures, fences, trees, and other similar articles, without intending to impair, or, in fact, impairing the substantial rights of the mortgagees. If, for every such removal, the occupants and those into whose possession the detached articles come, are liable to trover or replevin, at the instance of parties whose real rights have not been infringed, the privileges of land-owners are less than they are generally esteemed, and less than they need be for the purposes of justice.

In my opinion, the kind of redress granted to the plaintiff in *Jackson* v. *Turrell, supra,* is that which the plaintiff in this case should seek, and the judgment which he now has should be reversed.