### HOOKER v. CITY OF ROCHESTER.

(Supreme Court, Special Term, Monroe County. May, 1893.)

1. SEWER ASSESSMENT—DESCRIPTION OF LAND—CORRECTION.

Where a sewer assessment is levied on land by a wrong description, but there is no question as to the identity of the land assessed, the error in

description will not invalidate the assessment, but may be corrected under Laws 1880, c. 14, §§ 109, 215 (Rochester City Charter), giving the common council power to correct errors in the description of land on which an assessment is levied.

**2.** SAME—PROMISE NOT TO ASSESS.
    A promise by the executive board of the city of Rochester that no part of the expense of a sewer, except a nominal sum, would be assessed against lands, cannot bind the city, as the board had no authority to make the promise.

**3.** SAME—RESOLUTION NAMING ASSESSORS.
    Where the common council of the city of Rochester, by resolution, directs the assessors, naming them, to make a sewer assessment, it may be made by their successors in office, as the city charter (Laws 1880, c. 14) does not require that the names be mentioned, and the legal effect of the resolution is that the assessment be made by the assessors qualified, and not necessarily by the persons named.

**4.** SAME—CORRECTION OF ERRORS.
    Where a water tax properly assessable is erroneously assessed on the wrong property, the common council may correct the error, and the assessment is not thereby invalidated as to the other items of the property erroneously assessed.

**5.** SAME—VERIFICATION OF ASSESSMENT.
    As Rochester City Charter (Laws 1880, c. 14) § 205, which provides that the assessors, after completing an assessment roll, shall certify and swear to the same, and shall return it to the common council, who may correct, confirm, or set it aside, prescribes no form of affidavit, it is within the jurisdiction of the common council to determine the sufficiency of such affidavit; and, when an assessment has been confirmed, it cannot be collaterally attacked on the ground that the affidavit was insufficient.

**6.** SAME—ACTION TO VACATE.
    In an action to vacate an assessment, the plaintiff has the burden of proving that the city authorities omitted to do an act which is essential to the validity of the assessment.

Action by Susan H. Hooker against the city of Rochester to vacate an assessment.   Judgment for defendant.

In June, 1881, proceedings of the common council of the defendant were had for the construction of a sewer from Clifford street, through several streets, to the center of North St. Paul street, then along old Mill street to the east high bank of the Genesee river.   It was constructed, and in October, 1882, the common council directed the assessors to make assessment of $49,-052.48 (the expense of it) upon all the lots and parcels of land within a designated portion of the city.   The assessment was made, and in January, 1883, the roll was completed by the assessors.   By the description in the assessment roll, it appeared that lots 9 and 8, north side of Mill street, were assessed to Calvin Huntington for $698.   This was afterwards reduced to $537. In January, 1883, Huntington made to the plaintiff a warranty deed of lots described as 8 and 9; and in the tax roll for the year 1887 the plaintiff was assessed on premises described as lots 8 and 9, south part, east corner, Mill street, 104.9 feet in width, front and rear, depth 264 feet; also three-eighths of an acre in rear of lots 8 and 9, 104 feet wide, front and rear, and 235 feet deep, for city tax, $65.38; assessment for Clifford street outlet sewer, $563.85, including water rent charges, $11 and $18.28.   In March, 1888, the city treasurer sold the premises so assessed for nonpayment of the assessment, etc. They were bid in by the defendant.

H. J. & W. H. Sullivan, for plaintiff.
C. D. Kiehl, for defendant.

BRADLEY, J.   The plaintiff, by this action, seeks relief from the taxes and assessment represented by the roll made by the assessors

in 1887, and from the sale of her property made on her default in payment. The main subject of complaint is the assessment made for the sewer known as the "Clifford Street Outlet Sewer." The plaintiff alleges that such assessment was illegal, and the sale of the premises for that reason invalid. There was an error in the description of the plaintiff's property in the roll, as hereafter mentioned. In the year 1881, proceedings were duly had and taken, pursuant to the statute known as the "charter" of the defendant, with a view to the construction of the sewer in the city, the expenses whereof to be charged upon certain designated territory within which the premises in question were embraced. The sewer was constructed, and afterwards, in October, 1882, the common council, acting upon the report of the city treasurer, directed the assessors to make an assessment upon all the lots and parcels of land within the portion of the city so designated. The assessors proceeded to and did make the assessment, and on January, 1883, did certify and swear to the assessment roll in the manner hereinafter mentioned, and it was confirmed by the common council. Calvin Huntington then owned lots 9 and 10, on the north side of Mill street, in what was known as "Carthage Tract," west side of North St. Paul street, and land in the rear or west of those lots, and extending north, and lying also in rear of lots 8 and 7. It may be observed that what is here designated as lot 10 is only the north part of that lot, the southern portion of it having been cut off to make Mill street. In the original assessment, as confirmed, opposite the name of Calvin Huntington was property described as lots 9 and 8 on the north side of Mill street. He did not own lot 8. In that respect there was an error in the description of his premises. On January 20, 1883, Huntington, by warranty deed, conveyed to the plaintiff land described in the deed as lots 8 and 9, and three-eighths of an acre adjoining in the rear, Carthage tract, west side St. Paul street. The error in this deed was in describing part of land conveyed as lot 8; and afterwards, in July, 1888, the error, having been discovered, was corrected by a deed made between the same parties, stating its purpose to make the correction, and by it lot 8 was excluded, and lot 10 included; thus consummating the purpose of the parties to make and take conveyance of lots 9 and 10 with that in the rear, as described in the first deed. In the assessment roll of 1887, which is the one in question, the property as that of the plaintiff was described as lots 9 and 8, south part, east corner, Mill street, 104.9 feet width, front and rear, depth 264.4 feet; also three-eighths of an acre in rear on west side of St. Paul street,—and taxes and assessments thereon were: City tax, $65.38; for Clifford street sewer, $563.85; and it embraced water charges, $11 and $18.28. The plaintiff never owned lot 8; and it is contended that, for the error in including that lot in the assessment against her, it was rendered invalid. It may here be observed that, pursuant to a provision of the charter requiring it, the deed of January, 1883, before it was recorded, was presented at the office of the board of assessors, where an entry was made of the conveyance. Laws 1880, c. 14, § 286. The deed was recorded in July, 1883. By this means

the assessors, through the plaintiff, were advised, in 1883, that lots 8 and 9 were conveyed by Huntington to her, and they were not informed to the contrary until the correcting deed of 1888 was made. The time when the assessment was confirmed by the common council does not appear by the evidence submitted to the court, and, for aught that appears here, it may have been confirmed after the deed of January, 1883, was presented to the board of assessors. It was within the power and duty of the common council to make such correction before confirmation as the facts which came to their attention required. Id. § 205. Upon the plaintiff's petition, presented in 1886, for correction, reduction, or cancellation of the assessment, it was reduced from the sum of $698, as originally made, to $537; and, although the evidence submitted to the court is somewhat vague on the subject, it is quite evident that correction in the description of the premises was then made so as to correspond with the dimensions of lot 9 and the north part of lot 10, because it appears that lots 8 and 9 are each 66 feet wide in front and rear, while, as the southern portion of lot 10 was taken off for Mill street, the remaining part of it is only about 40 feet in width, and the description of the width as given in the assessment roll of 1887 of lots 8 and 9 is 104.9 feet, which substantially corresponds with 9 and 10, and differs materially (about 27 feet) in width from that of lots 8 and 9. The mistake, therefore, would seem, not to have been in the premises, but in the description of them in the roll; and it seems that the plaintiff, at the time that the correction was made, in 1886, had not been advised of the error in the description as conveyed by the first deed to her. In view of the manner that the assessors were led into the error in describing the premises, and that it was not an erroneous assessment of property, but only in description, it was not one which would invalidate the assessment, but was subject to correction, as provided by the statute. Laws 1880, c. 14, §§ 109, 215.[1] It would therefore seem that, whatever relief the plaintiff may be entitled to by reason of the mistake so occasioned, the remedy for it is not by action to vacate the assessment.

The plaintiff's grievance, to some extent, may have arisen from the fact that, prior to the construction of the Clifford street sewer, a public sewer had been constructed along near the premises in question, and was adequate for them; and, after direction had been given for the construction of the Clifford street sewer, the executive board of the defendant promised that no part of the expense of it other than a mere nominal sum should be assessed against such premises. This promise was not within the powers conferred upon the executive board, and therefore is ineffectual for any purpose in behalf of the plaintiff.

The question is raised upon the fact that the personality of the assessors who made the assessment was other than that directed by the resolution of the common council of October, 1882. By that resolution, David McKay, William Maher, and V. Fleckenstien, the

---

[1] Sections 109 and 215 give the common council of the city of Rochester authority to correct errors in the description of lands on which an assessment is levied.

assessors of the city, not interested in the property benefited, etc., were directed to make an assessment upon all the lots and parcels of land within the designated portion of the city, etc.    This was, in legal effect, that it be made by the assessors thus qualified, and not necessarily by the persons named; and, as one of those so named ceased to be assessor before the assessment was made, the person succeeding him in the office properly, so far as appears, participated with the other two in making it.    The statute does not require that the names of the persons who are assessors be mentioned in the ordinance or resolution of the common council.    The direction is to the assessors.    Laws 1880, c. 14, § 199.

The plaintiff's counsel raises a question upon the effect of the insertion in the roll of 1887 of the city tax of $11 for water.    The assessors erroneously included that against the plaintiff, as it was not for water used upon her premises, but for water taken and used by H. B. Hooker on a lot south of Mill street, and opposite the plaintiff's premises.    Some reduction was made, but it does not appear that this item was included in it.    It may be stated as a rule that, when any substantial portion of the amount for which assessment is made by a municipal corporation is void, the entire assessment may be so treated.    But the water tax was not void.    While it was properly assessable, the item in question was erroneously assessed to the plaintiff or as against her premises.    This, I think, could not have the effect to invalidate the entire assessment on the roll against her. It was the subject for correction, within the power and direction given by the provisions of the city charter to the common council.    It seems very evident from what appears that the principal complaint of the plaintiff had relation to the sewer assessment.    She made some application to the common council on the subject after 1886, and before 1891; and in December of that year the plaintiff, in her petition presented to the common council, stated that she had ever been, and then was, ready and willing to pay, and had tendered to the city treasurer, all the taxes and assessments against her on the roll of 1887, except the said sewer assessment, which she asked to have canceled for reasons stated by her, to the effect that it was injurious to the health of her family; that, before it was constructed, she was advised that her property would not be assessed for it more than a nominal sum, for the reason that a public sewer, previously constructed along near her premises, was adequate for them; and that Clifford street sewer was not constructed in Mill street, but in and along her private property.    While the grievance expressed by the plaintiff in her petition related solely to the sewer assessment, and no fault is there manifested as to anything else in it, she is not necessarily denied the right to assert in this action such other objection as may be made against the validity of the charges made in the assessment roll against her and her property.

Another question arises upon the verification of the roll made by the oath of the assessors.    The proceedings to be observed and pursued in directing and causing improvements to be made in the city by its officers, and in making assessments to defray the expenses of them, are defined by the statute known as the "Charter."    Laws

1880, c. 14. With a view to the determination to make an improvement, the common council cause an estimate to be made; also a description of the portion of the city deemed proper to be assessed for the expense of it. Thereupon their determination is made; and, in the course of the proceeding, the common council make an order reciting the amount of the expense to be assessed on such portion of the city, and directing the assessors, if they are not interested in any of the property so benefited, and not of kin to any person so interested, etc., "to make an assessment upon all the lots and parcels of land within the portion or part so designated of the amount of the expense, in proportion, as nearly as may be, to the advantage which each shall be deemed to receive by the making of such improvement." The order is then certified to the assessors (section 199), who, after taking the requisite oath, are required to proceed according to the order to "make out an assessment roll, in which shall be entered the names of the persons assessed, so far as they can ascertain the same, the value of the property for which they are assessed, and the amount assessed to them, respectively, with a brief description of the lots and parcels of land assessed" (section 202). After it is made, the assessors, at a time and place designated in a notice, meet to hear such objections as may be made to the assessment; and, "when completed, the assessment roll shall be certified and sworn to by the said assessors, or a majority of them." Then it goes to the common council for their action upon it. Section 205.

It is urged that the roll was not properly sworn to by the assessors, and for that reason the assessment cannot be sustained. They did annex to the roll their affidavit that it was made by them in pursuance of an ordinance of the common council (which ordinance was referred to as annexed to the affidavit), and was, according to the best of their "knowledge and belief, a just and true assessment against the persons or parties to be benefited, according to the benefit derived." The criticism is that the sworn statement of the assessors related only to the persons or parties benefited, when they should, to verify it, have referred to the property of the designated district, as it was their duty to assess all the parcels of it in proportion, as nearly as practicable, to the advantage which each should deem to receive from the improvement. It evidently was contemplated by the statutory direction to swear to the roll that the assessors should so verify it as to make it appear that they had faithfully performed their duty in making the assessment; and, if they had used the word "property" in place of that of "parties" in the affidavit, there would have been no reasonable occasion to criticise it. If the statute had prescribed the form of the affidavit, or stated what it should contain, the omission to do so may have been fatal to the assessment. Van Rensselaer v. Witbeck, 7 N. Y. 517; Johnson v. Elwood, 53 N. Y. 431; Brevoort v. City of Brooklyn, 89 N. Y. 128; Shattuck v. Bascom, 105 N. Y. 39, 12 N. E. 283; Stebbins v. Kay, 123 N. Y. 31, 25 N. E. 207; Inman v. Coleman, 37 Hun, 170; O'Donnell v. McIntyre, Id. 615, 116 N. Y. 663, 22 N. E. 1134. But, as has been seen, the charter of the city of Rochester does not provide what the affidavit shall contain. It merely directs that the assessment roll shall be certified and sworn

to by the assessors.    Laws 1880, c. 14, § 205.    They did swear to it, as before stated, and did certify it.    They did not, in the affidavit, swear that they had embraced within the assessment all the parcels of land included in the portion of the city designated for the purpose, nor did it necessarily appear by the affidavit that they had done so; and for that reason it may be that the common council, without a further sworn statement of the assessors, ought not to have confirmed the assessment.    They did, however, state in the affidavit that the assessment was made by them "in pursuance of an ordinance of the common council," and referred to the ordinance as annexed to their affidavit.    This may be so construed as to import that they had made the assessment in conformity to the direction in such ordinance; and by reference to that of October, 1882, it is seen that the assessors were directed to make the assessment upon all the lots and parcels of land within the designated portion of the city.    It may be assumed that this was the ordinance referred to.    Inasmuch as the statute prescribed no terms to be expressed in the sworn statement of the assessors, it was within the jurisdiction of the common council, upon the assessment roll, certificate, and affidavit annexed, to take proceedings with a view to confirmation, and confirm the assessment, and it is not subject to effectual attack collaterally.    Parish v. Golden, 35 N. Y. 463.

The plaintiff's counsel says in his argument that the assessors who made the assessment did not swear that neither of them was not interested in any of the property which they were directed to assess, and not of kin to any person so interested; and it is urged that such fact should affirmatively appear in support of the assessment.    There is no evidence of such omission, and no reason to sustain such contention in the present case.    The statute provides that the assessors shall take such oath before they proceed to make an assessment; and, further, that they will faithfully and impartially discharge the duty imposed upon them by the order of the common council.    Laws 1880, c. 14, § 200.    It may be assumed that this oath was taken until the contrary appears, as the plaintiff has the burden of proving the omission to do what is essential to the validity of the assessment to be done.    It would be otherwise if the city were seeking to justify or support the assessment for any purpose.    Then, except so far as it was relieved by the statute from proving that it was the result of proceedings legally conducted, the city would be required to show that everything jurisdictionally requisite had been done to support any claim founded upon the assessment.    In the case at bar the defendant is merely resisting the attack made by the plaintiff upon the legality of the assessment; and therefore the argument about the presumption of want of jurisdiction is not necessarily applicable to it to the extent claimed on the part of the plaintiff.

Upon the facts, as represented by the evidence, I am unable to see any ground to support the action for the relief sought by it.    The complaint should therefore be dismissed.