LOUISVILLE & NASHVILLE RAILROAD CO. *v.* GULF OF MEXICO
LAND & IMPROVEMENT CO.

1. VENDOR AND VENDEE. *Contract for conveyance. Option.*

   A contract to convey a strip of land across certain sections along
   a railroad, one hundred feet wide on either side of the track, as
   surveyed, located and staked, at any time within two years from
   date, when requested by the railroad company and upon the
   payment of a stipulated sum, is but an option.

2. SAME. *Adverse possession. Necessity of exclusive possession. Inno-
   cent purchaser.*

   A railroad company, claiming under such a contract, never re-
   corded, having for more than ten years used and enclosed only
   a strip fifty feet wide on either side of its track, the same being
   sufficient for all of its purposes, and allowed the landowner to
   use and enclose the balance, cannot claim said balance by ad-
   verse possession; nor can it as against innocent purchasers for
   value claim that the legal title to said balance was held in trust
   for it.

3. SAME. *Possession of part of tract. Extended by construction. Limita-
   tion on doctrine.*

   Actual adverse possession of a part of the land described in an unre-
   corded conveyance under which the possessor claims title will
   extend a constructive actual possession only to so much of the land
   as is used in connection with the tract actually possessed and which
   is reasonable and proper for that purpose, according to the cus-
   tom of the country.

FROM the chancery court of Jackson county.

HON. STONE DEAVOURS, Chancellor.

The Gulf of Mexico Land & Improvement Co., appellee, was complainant in the court below; the railroad company, appellant, was defendant there. From a decree in complainant's favor the defendant appealed to the supreme court. The facts are fully stated in the opinion of the court.

*Gregory L. Smith,* for appellant.

The original grantee entered the property under the bonds for title and claiming the entire strip of land, and it and its successors remained in such possession for thirty years. Appellee claims that at the expiration of the two years from the date of the bonds for title the right under the bonds for title expired. If that be true, then from October 26, 1869, appellant and its predecessors in title, wrongfully held the possession of said property, claiming title thereto under such bonds, and the character of the holding—the occupancy of part of the land with its railroad—was such as necessarily gave notice to the owners that it claimed and owned the lands adversely to them. This is not denied by appellee, for it admits that appellant obtained title by adverse possession to one hundred feet in width of the two hundred feet strip. This possession, therefore, ripened into title October 26, 1879, and this possession being of a part of the strip under color of title to the whole was possession of the whole strip and title to the whole strip ripened in appellant October 26, 1879. *Niles* v. *Davis,* 60 Miss., 755; *Davis* v. *Davis,* 68 Miss., 478; *Wilson* v. *Williams,* 52 Miss., 487.

Complainant admits that this would have been the case had the transactions been between individuals and the occupancy of the one hundred feet strip been for ordinary purposes, but it claims that as the occupancy was for right of way purposes and as the defendant did not need but one hundred feet in width for such purposes, it will be presumed that it only claimed what it needed. The contention is not sound in itself, for the same rule would equally apply to a farmer or any other person. Suppose a farmer occupied one hundred acres under color of title cover-

ing an entire section, would the fact that he only needed one hundred acres for farming purposes raise a presumption that he did not claim to the limits of his color of title?

It is again claimed that appellee's contention is sustained by the case of *V. & M. R. R. Co.* v. *Barrett,* 67 Miss., 585, but such is not the case. The contract under which the railroad claimed in that case did not specify the lands to be held under it; it merely authorized the company to locate and use a right of way over the lands not exceeding one hundred feet in width; until the right of way was located and laid out the contract described no lands, and after the right of way was located and laid out, by reference, described only the right of way as laid out, so that when possession was claimed under that instrument the claim was limited by the very terms of the instrument to the right of way laid out, and did not, therefore, extend beyond it. In the case at bar, the description of the property covered by the contract is specific and definite in itself, and does not depend for definiteness upon the future acts of the railroad, and when possession was taken under it the limits of the possession were definitely defined by it.

The contention that the nature of defendant's necessities and use of the property raises the presumption that it only claimed one hundred feet is in direct contradiction of the fact that it was "claiming the right thereto (the lands) under the said instruments of which Exhibits A and B are copies and in no other way."

Appellee again contends that as appellant's color of title was not recorded, it was a *bona fide* purchaser of the land without notice. This position is not well taken; appellant's possession of part of the tract under color of title gave constructive notice of the extent of its claim as shown by its color of title.

*Green & Green,* for appellee.

The asserted rights of the defendant are founded upon two unrecorded, ancient documents, executed over a quarter of a century ago.

Let it be carefully noted by these instruments no land was conveyed to the railroad company. They did not operate *in praesenti* as a vestiture of the title in the appellant. That the interest that appellant had was an option to purchase certain lands based upon a valuable consideration, but this option was upon special terms and conditions to prove the performance of which the burden rested upon appellant. To make successful claim under these options it developed upon appellant to show affirmatively the performance of the conditions:

1. The option had to be exercised within two years after its date.

2. Upon the express condition that the party of the second part, their sucessors or assigns, pay the full sum of one dollar for the amount of land to be conveyed.

The idea of an adverse possession is excluded entirely. In the nature of things, there can be no adverse possession when the land is not held exclusively under claim and color of title.

Appellant claims under a voluntary, unrecorded option, defunct and impossible of performance under its very terms, while on the contrary the claims of appellee are based upon value paid to the parties who upon the face of the records were its true and lawful owners. Our vendors upon the face of the record had the perfect title to all of the land we bought. We examined the records, upon them we acted *bona fide,* paid value, and are we now to be deprived of the fruits of our purchase, for the benefit of a party who has slumbered over his rights for over thirty years, for the benefit of one who has violated the plain behest of the law in not recording the deed?

Upon the face of the record our vendors and their predecessors in title appeared to be the legal owner. The record showed this. The appellant had its track fenced and was in possession of the land so enclosed.

We deny that appellee had constructive notice of the claims of appellant. We freely admit that if a party is in actual and open possession of land that he need not record his deed, as

all parties will have constructive notice of his title to the land, but we affirm·that the fact of possession of our tract, enclosed and under fence, will not impart notice of title to another parcel of land unfenced, and uninclosed and over which no visible acts of ownership are exercised, or even though adjoining the enclosed track when the vendor of the land owns all of the same.    Let it also be noted that one strip of this land was in our actual possession and under fence and that the rest was wild land and that as to them the possession was joint, and as to them there had been no change in the occupancy, nothing definite to put a purchaser upon notice, and upon inspection it would appear to be all part of one tract and nothing to distinguish the same. *Billington* v. *Welsh,* 6 Am. Dec. (Penn. 1812), ·406; *Bell* v. *Twilight,* 45 Am. Dec. (1845), 367.

The possession by appellant, at best, was only a joint posssession with appellee, and under the settled rule this is not enough. *Boyce* v. *McCullough,* 39 Am. Dec. (1842), 35; *Butler* v. *Stevens,* 26 Me. (1847), 490; *McCarthy* v. *Nicrosi,* 72 Ala. (1842), 334.

In *Loughbridge* v. *Bowland,* 52 Miss. (1876), 553, the law is correctly declared when it is said: "But, that possession may have the effect of protecting the title under which it is held, it must be of that character which would arrest attention.    See also *Stevens* v. *Magee,* 81 Miss., 644.

Argued orally by *Garner W. Green,* for appellee.

CALHOON, J., delivered the opinion of the court.

The appellee filed its bill in the court below to remove appellant's claim to certain lands as a cloud upon its title.    The land in question consists of two strips of 50 feet each, in width, adjoining on either side the fenced right of way of appellant of 100 feet, the amount fenced being 50 feet on either side of the center of the actual railroad track.    As to this 50 feet of fenced land there is no claim.    There is no dispute whatever about the

facts.   On the 26th of October, 1867, D. Lewis and A. E. Lewis, under whom both sides to this litigation claim, executed their separate instruments, Exhibits A and B to answer, evidencing their contract with a corporation then known as the New Orleans, Mobile & Chattanooga Railroad Company, wherein the following language is used: "The said party of the first part, for the consideration of the sum of one dollar in hand paid, and the further consideration of the benefits derived from the location of the railroad of said party of the second part across the land of the party of the first part, do by these presents hereby agree to the contract and sell and convey by deed of warranty to the party of the second part a strip, parcel or piece of land situate in the county of Jackson and state of Mississippi, being a part of sections [here stating them], and described as follows: Being a strip of land two hundred feet wide, and extending across the lands of the party of the first part, and lying one hundred feet wide on each side of the center line of the railroad of the party of the second part as surveyed, located and staked across the lands aforesaid by the officers of the party of the second part; and the party of the first part agrees to execute and deliver to the party of the second part a warranty deed to said land at any time within two years from the date of this instrument, whenever required by the party of the second part so to do; provided and upon condition, nevertheless, that the said party of the second part, their sucessors or assigns, or legal representatives, pay to the party of the first part the whole sum of one dollar for the amount of land so conveyed as aforesaid in lawful money of United States.   And the party of the second part hereby covenant and agree with the party of the first part that they will pay to the party of the first part the full sum of one dollar for the full amount of the land conveyed to them by the party of the first part upon the execution and delivery of the warranty deed to them as aforesaid by the party of the second part of the lands and premises described as aforesaid."   These deeds have never been recorded.   It will be noted that appellant admits in its an-

swer that the legal title is in appellee, but sets up that it holds
the legal title in trust for appellant.

It is agreed by the parties that D. Lewis and E. A. Lewis ex-
ecuted these deeds in 1867, and that E. A. Lewis, with full no-
tice of these deeds, acquired the title of D. Lewis to all the lands,
subject, of course, to any interest inuring to the grantee railroad
company under the deeds, and that A. E. Lewis died testate on
the 31st day of December, 1885, and that on January 27, 1890,
his devisees conveyed to H. F. Russell, and that Russel, on June
2, 1890, conveyed to Jno. B. Lyon, who conveyed to complain-
ant below (appellee here); and that these conveyances subse-
quent to the death of A. E. Lewis conveyed the whole property,
without any exception or reservation whatever of the 200 feet
of land of which 100 feet are now in controversy; and that all
of these successive purchasers after the death of A. E. Lewis paid
value, and had no notice whatever of the unrecorded contracts
of A. E. and D. Lewis above mentioned, unless they are affected
with notice of the claim to the whole 200 feet by the railroad
company by the fact of half being under fence.   It is further
agreed between the parties that the New Orleans, Mobile & Chat-
tanooga Railroad Company built its railroad on a right of way
cleared out not exceeding 100 feet as surveyed, located, and
staked and used said railroad, without fencing any part of the
land, and that on January 1, 1869, it executed a trust deed on
all its properties and franchises, and that by foreclosure of the
trust the property, rights, and franchises were sold and became
the property of a concern styled the New Orleans, Mobile &
Texas Railroad Company, on April 28, 1880, which latter com-
pany thereafter operated the railroad, but without fencing any
part of it, up to October 5, 1881, when this company conveyed
all its rights and franchises to the Louisville & Nashville Rail-
road Company (appellant here), which took possession and
operated the railroad without fencing any part of the land until
some time in the year 1883, when it agreed with A. E. Lewis to
fence in its track between West Pascagoula and Fountainbleau

and for some distance east of Fontainbleau, and accordingly did, in the year 1883, fence in its track by placing a fence on each side of it at a distance of 50 feet from its center on either side; and that appellant has operated its railroad and maintained that fence up to some time in the year 1901, when it rebuilt its fence on each side of the track at a distance from the center of 100 feet instead of 50 feet, as before. It is further agreed that the land in dispute is uncultivated, and that none of the occupying railroad companies have ever exercised any visible acts of ownership over any part of the land not inclosed by the fences erected in 1883 until the year 1901, when the fences were extended to inclose 200 feet instead of 100 feet, as before. It is further agreed between the parties that, after the erection of the fence in 1883, A. E. Lewis ran a fence from the point where the western line of section 32 (part of the land conveyed) intersects the railroad for a distance of a mile and a half to Gravelline Bayou, which connects with the gulf or bay and the West Pascagoula river, and extends from the gulf or bay to the railroad track; so that, after this fence was built, a tract of land south of the track was bounded on the west by this fence and Gravelline Bayou, and on the south by this bayou and the gulf, and on the east by West Pascagoula river, which boundaries, in connection with the railroad fence, formed a pasture from which cattle could not escape, and that E. A. Lewis in his life used this inclose as a pasture, which use was continued to the time of sale to complainant, and the complainant has from time to time rented it under verbal leases for pasture purposes, and this use has been continuous up to the date of the lawsuit. It is further agreed by the parties that neither appellant nor any of its grator companies has ever needed for use as right of way any more than 100 feet in width. On the pleadings, exhibits, and agreed state of facts the chancellor below decreed for the appellee.

Very clearly, Exhibits A and B conveyed no title whatever to the original railroad company. They are in no sense convey-

ances. They are not bonds for title. By them the railroad company acquired simply an option to demand conveyances, but this right to demand could not be exercised unless within two years from October 25, 1867, the date of the instruments, and not then without tender of the purchase price, and then only for 200 feet "as surveyed, located, and staked." Without compliance with the express conditions, the railroad company had no rights unless such as they might acquire by actual adverse possession exclusive in its nature. 1 Am. & Enc. of Law, 857-859; 3 Wash. on Real Prop. (6th Ed.), sec. 1981. The railroad company undoubtedly acquired title by prescription to the 50 feet on each side of its track which it fenced in in the year 1883, but only because of the inclosure did it acquire any title to that, even as against D. Lewis and A. E. Lewis, much less as against innocent purchasers under them.

There is another principle which defeats the claim of appellant. The doctrine of constructive adverse possession coextensive with the description in the conveyance "will extend only to such land as is used in connection with the land actually possessed, and to only so much as is reasonable and proper for that purpose according to the custom of the country." 1 Am. & Enc. of Law, 864. There is no proof of this, and so, even if the option was a conveyance, appellant's claim falls. *Jackson* v. *Woodruff,* 13 Am. Dec. 525; *Day* v. *R. R. Co.,* 41 Ohio St., 392; *Thompson* v. *Burchans,* 61 N. Y., 52; *Coleman* v. *Eldred,* 44 Wis., 210. See 3 Wash. Real Prop. (6th Ed.), secs. 1981 to 1986, for observations reaching all phases of this case. The legal title is conceded to be in appellee. The claim that this legal title is held in trust for appellant cannot be sustained on the facts in this record. There were no visible acts of ownership by appellant, and its possession was, if it had any, not even exclusive. Appellee was certainly in joint, if not exclusive, possession of the southern part. A mixed possession is not enough to warrant disturbance of the record rights of innocent purchasers for value. *Billington* v. *Welsh,* 6 Am. Dec., 406; *Bell* v. *Twilight,*

45 Am. Dec., 367.; *Boyce* v. *McCulloch,* 39 Am. Dec., 35.   There was no such change of ownership of the land in controversy as to "arrest the attention" of purchasers.   *Stevens* v. *McGee,* 81 Miss., 644; 33 South., 73.

*Affirmed.*